# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

TAMMY COLE FURLOW

CRIMINAL ACTION

NO. 17-16-SDD-EWD

## RULING

This matter is before the Court on Defendant, Tammy Cole Furlow's ("Furlow" or "Defendant") Motions to Vacate under 28 U.S.C. § 2255.[1]  Also submitted is Furlow's Request Permission to Add Additional Comments.[2]  The United States of America ("the Government") filed Oppositions[3] to these motions, to which Defendant filed various responses.[4]  Defendant also filed a Motion for Evidentiary Hearing, Appointment of Counsel, and for Decision in the Case,[5] which the Government opposed.[6] The Court has considered all briefs submitted by the parties, and for the following reasons, Defendant's Motions will be denied.

## I.    BACKGROUND

Furlow was indicted in February 2017 and charged with several financial crimes—mostly involving stealing from her employer—committed between 2010 and 2015.[7] In March 2017, Furlow was released on pretrial supervision with conditions.[8] These

---

[1] Rec. Docs. 151, 159.
[2] Rec. Doc. 166.
[3] Rec. Docs. 155, 158, 160, 164, 168.
[4] Rec. Docs. 161, 165, 169.
[5] Rec. Doc. 175.
[6] Rec. Doc. 176.
[7] Rec. Doc. 1.
[8] Rec. Doc. 141.

conditions included: not violating the law; not obtaining new employment without preapproval from pretrial services; and notifying third parties (*e.g.*, employers) as directed.[9]

Furlow utterly failed to comply with these conditions. Not only did she get a new job, not report it to pretrial services, and not notify third parties,[10] she also committed numerous new financial crimes against her new employer.[11] A warrant was subsequently obtained by the Baton Rouge Police Department, and "Furlow fled prosecution and absconded from supervision prior to the arrest. [She] failed to turn herself in and hid from authorities for more than three years."[12] Furlow moved to Wisconsin and lived under an alias[13] until she was arrested in Wisconsin in October 2020, placed in federal custody, and returned to Louisiana.[14]

Furlow admitted to these financial crimes spanning from 2013 to 2017[15] and pled guilty to two counts of wire fraud in 2021.[16] The Court sentenced Furlow to 97 months in prison, ordered restitution in the amount of $749,738.69, and recommended that the Bureau of Prisons ("BOP") house the defendant in a facility capable of providing her with mental health treatment.[17] By letter, Furlow requested to be housed near Kalamazoo, Michigan, but she acknowledged that the Court could only *request* housing in Michigan,

---

[9] Rec. Doc. 114, p. 2; Rec. Doc. 141, p. 8.
[10] Rec. Doc. 141, pp. 8, 27.
[11] Rec. Doc. 141, p. 8; Rec. Doc. 132, p. 8.
[12] Rec. Doc. 141, p. 27.
[13] *Id.* at pp. 40-41.
[14] *Id.* at p. 1.
[15] Rec. Doc. 132, pp. 6-8; Rec. Doc. 141, pp. 8-24.
[16] Rec. Doc. 145.
[17] Rec. Doc. 145, pp. 2, 7; Rec. Doc. 150 at p. 25.

near Furlow's family, not guarantee it.[18]  The Court did not make this request.[19] Neither Furlow nor her attorney appealed.

## II.    ARGUMENTS

Furlow filed two § 2255 Motions, one on March 3, 2022,[20] and the other on August 11, 2022.[21] Furlow's first set of claims, discussed in the first § 2255 filing, concern alleged guideline-calculation errors. Furlow claims that: (1) she should have received a 3-point reduction for accepting responsibility; (2) she should not have had a point increase for victimizing more than ten people; and (3) her prior conviction should not have been awarded criminal history points.[22] Furlow also claims that "[her] attorney was aware of the discrepancies in her point count but did not present all of the information to the court."[23]

Furlow's second § 2255 Motion contains substantively identical claims as in the first, aside from one new claim. Essentially, "Furlow complains about how often she communicated with her attorney and that her attorney should have sought a reduced sentence based on mental illness and childhood trauma."[24] That is, Furlow contends that her attorney should have raised the issue of Furlow's potential "diminished capacity" due to her debilitating mental illness—borderline personality disorder—and sought a reduction in Furlow's sentence. Furlow also claims that her attorney failed to give her correct advice concerning her rights on appeal following sentencing.[25] These claims are meritless as will be discussed below.

---

[18] Rec. Doc. 158 (SEALED).
[19] Rec. Doc. 145, p. 2.
[20] Rec. Doc. 151.
[21] Rec. Doc. 159.
[22] Rec. Doc. 151, p. 4. The Court notes that Furlow's attorney argued the first two points but not the third.
[23] Rec. Doc. 151, p. 4.
[24] Rec. Doc. 160, p. 1 (citing Rec. Doc. 159, p. 5, 12.)
[25] Rec. Doc. 151, p. 8.

Furlow also claims she is being subjected to cruel and unusual punishment in prison in violation of the Eighth Amendment to the U.S. Constitution. Specifically, Furlow alleges that the Bureau of Prisons is "unable or unwilling to provide basic programs and health care" constitutes cruel and unusual punishment.[26] Additionally, the Cognitive Behavior Therapy (hereinafter, "CBT") ordered by this Court at sentencing is unavailable at her current facility.[27]  Furlow complains that being more than 500 miles away from her home, thereby isolating her from any family support, violates Congress's First Step Act.[28] Finally, Furlow contends the BOP's policy of continuous lockdowns in prisons to prevent the spread of COVID-19 violates the Eighth Amendment. Furlow posits that she is "in effect warehoused and isolated."[29]

Through Responses and other Amendments, Furlow continuously raises new claims that collaterally attack her sentence, including untimely claims that the Government breached the Plea Agreement[30] and that a newer version of the Sentencing Guidelines should apply now to reduce her sentence.[31]

The Government counters Furlow's claims as follows. Furlow's claims regarding her sentencing guideline range, if read as ineffective assistance of counsel claims, fail because Furlow failed to allege facts that, even if true, show deficient performance and prejudice.[32] In the alternative, if not viewed as ineffective assistance of counsel claims, the Government argues Furlow's sentencing range claims are not cognizable and are

---

[26] Rec. Doc. 151, p. 7.
[27] CBT was not ordered by this Court, but merely recommended. This is addressed in the Government's brief as well.
[28] Rec. Doc. 151, p. 7. *See* First Step Act of 2018, Pub. L. 115-391, 115th Cong. § 2 (2018).
[29] Rec. Doc. 151, p. 7.
[30] Rec. Doc. 161.
[31] Rec. Docs. 166, 170.
[32] Rec. Doc. 155, p. 1.

either waived by her plea agreement or procedurally barred.[33] The Government further contends Furlow's claims regarding the conditions of her confinement fail because they are not cognizable in a § 2255 proceeding.[34] Finally, Furlow's recently added claim, labelled an ineffective assistance of counsel claim, fails because she has not alleged facts sufficient to show that her counsel performed deficiently.[35] The Government contends all other claims are untimely and otherwise meritless on several grounds.

## III.    LAW AND ANALYSIS

### A.    Relief Under Section 2255

Under 28 U.S.C. § 2255, a federal inmate can file a motion to vacate, set aside, or correct their sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such a sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to a collateral attack." Relief under Section 2255 is limited to "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[36]

The district court must conduct a preliminary review when a Section 2255 motion is filed.[37] "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."[38] Next, a court must hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[39] An

---

[33] Rec. Doc. 155, p. 1.
[34] Rec. Doc. 155, p. 2.
[35] Rec. Doc. 155, p. 2 (citing Rec. Doc. 151, p. 8).
[36] *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).
[37] *United States v. Hutton*, No.16-184, 2020 WL 5517332, at *2 (E.D. La. Sep. 14, 2020).
[38] Rules Governing § 2255 Proceedings, Rule 4(b).
[39] 28 U.S.C. § 2255(b).

evidentiary hearing is required if the prisoner produces any "independent indicia of the likely merit of [his] allegations."[40]

Further, an issue raised for the first time in a Section 2255 motion will only be considered if the defendant shows "cause" for his failure to previously raise the issue and "actual prejudice" resulting from the alleged error.[41] Vague or conclusory allegations are insufficient to raise a claim under 28 U.S.C. § 2255.[42]

The Court finds that no hearing is required Furlow's motions because the record conclusively demonstrates that Furlow not entitled to relief sought for the reasons which follow.

### B.    Ineffective Assistance of Counsel

Furlow does not use the phrase "ineffective assistance of counsel" to describe all her claims; however, as the Government argues, this is "how these claims, read liberally, should be understood."[43] Specifically, "Furlow squarely blames her attorney for these supposed errors."[44] Thus, the Court will proceed interpreting Furlow's claims as ineffective assistance of counsel claims.

*Strickland v. Washington* articulates the standard for these claims.[45] In *Strickland*, the Supreme Court held that, to obtain relief, a defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.[46] A deficient performance is one in which the attorney's actions were

---

[40] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).
[41] *United States v. Frady*, 456 U.S. 152,167-68 (1982).
[42] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).
[43] Rec. Doc. 155, p. 5.
[44] Rec. Doc. 155, p. 5.
[45] *Strickland v. Washington*, 466 U.S. 668 (1984).
[46] *Id.* at 687.

unreasonable under prevailing professional norms.[47]  A defendant must prove both prongs to succeed in an ineffective assistance of counsel claim.[48]

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[49] "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."[50]  In analyzing counsel's performance, a reviewing court must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.[51] The reviewing court must "judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[52] Furthermore, a petitioner must overcome a strong presumption that defense counsel's conduct falls within a wide range of reasonable representation.[53] "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."[54]  "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[55] With these principles in mind, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.[56]

---

[47] *Id*. at 688.
[48] *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).
[49] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).
[50] *Strickland*, 466 U.S. at 688.
[51] *Id*. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).
[52] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)(quoting *Strickland*, 466 U.S. at 690).
[53] *Harrington v. Richter*, 562 U.S. 86, 104 (citing *Strickland*, 466 U.S. at 689).
[54] *Bell v. Cone*, 535 U.S. 685, 702 (citing *Strickland*, 466 U.S. at 689).
[55] *Strickland*, 466 U.S. at 689.
[56] *Id*.; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)(counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it

Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.[57] A reasonable probability is one that is sufficient to undermine confidence in the outcome.[58] Furthermore, "[t]he petitioner must 'affirmatively prove,' not just allege, prejudice."[59] This standard requires a "substantial," not just "conceivable," likelihood of a different result.[60] In making this determination as to prejudice, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[61] Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.[62]

### 1.    Sentencing Guidelines Calculations

Furlow maintains that three errors in calculating her sentencing guidelines resulted in an unlawful higher sentence: (1) she should have received a three-point reduction for accepting responsibility; (2) she should not have received a point increase for more than ten victims; and (3) no criminal history points should have been assigned for her prior conviction.[63]  While Furlow argues her attorney failed to make these arguments at the sentencing hearing, the record reflects that her attorney did argue the first two issues.[64]

---

is so ill chosen that it permeates the entire trial with obvious unfairness.'")(quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

[57] *See United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998).

[58] *Strickland*, 466 U.S. at 694.

[59] *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693).

[60] *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

[61] *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).

[62] *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)(citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

[63] *See* Rec. Doc. 151, p. 4.

[64] *See* Rec. Doc. 151, p. 4; Doc. 142, p. 3–4, 8; Doc. 150, p. 10–15.

The Court denied the objections.[65]

First, the Government argues that Furlow's ineffective assistance claims are "impermissibly vague."[66]  The Court agrees. "In this circuit, we require a petitioner to point to specific incidents of ineffectiveness; the district court need not accept speculative and inconcrete claims."[67] Furlow does not explain what "information" her attorney could or should have presented to the Court regarding the sentencing guidelines.[68] Furlow references conversations with her counsel but fails to note when these conversations took place and what evidence would support her allegations. Without knowing what evidence Furlow's attorney allegedly possessed but did not present, the Court is unable to ascertain whether her attorney performed deficiently.

As for the merits, Furlow's attorney *did* raise the first two issues in objections and argument to the Court before sentencing; the Court overruled these objections.  Furlow does not explain what her attorney could or should have done differently that would have caused the objections to be sustained.  As to the third claim regarding her criminal history, the Government maintains that this argument "was doomed from the start and Furlow's lawyer did not perform deficiently for failing to raise a meritless claim."[69]  Given that her claims are meritless, Furlow is unable to demonstrate prejudice.

Furlow contends her attorney advised her that she would receive a three-point reduction for acceptance of responsibility.[70]  Furlow claims she did not receive this reduction because her attorney failed to point out unspecified "discrepancies" in the

---

[65] Rec. Doc. 150, pp. 23-24.
[66] Rec. Doc. 155, p. 9
[67] *Martin v. State of Texas*, 694 F.2d 423, 425 (5th Cir. 1982).
[68] Rec. Doc. 151, p. 4.
[69] Rec. Doc. 155, p. 10 (citing Rec. Doc. 151, p. 4; *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995)).
[70] Rec. Doc. 151, p. 4.

record for the Court. To the extent that Furlow claims her attorney "promised" her this reduction, this claim is undermined by the provision in the Plea Agreement which provides:

> I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be. I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.[71]

Furlow also fails to demonstrate prejudice on this point. Her attorney argued to the Court that she should receive points for acceptance of responsibility; the Court rejected this argument because Furlow committed additional crimes while under indictment and supervision: ""That is absolutely a failure to accept responsibility. It is continuing the criminal conduct under which she had been charged without mind to the fact that she was under supervision."[72] Furlow fails to specify, and the Court cannot envision, what arguments could have been made that would have resulted in the Court awarding Furlow acceptance of responsibility points. The law supports the Court's decision. In *United States v. Rickett*, the Fifth Circuit explained that a "district court may properly deny a reduction for acceptance of responsibility for failure to refrain from criminal conduct while on pretrial release."[73]

Furlow's claim that she had less than ten victims also falls short. Again, Furlow fails to direct the court to the evidence that her attorney could have presented to the Court in making this objection, and how it would have achieved a different result. Further, the Court overruled this objection raised by Furlow's counsel at sentencing:

---

[71] Rec. Doc. 132, p. 15.
[72] Rec. Doc. 150, p. 24.
[73] 89 F.3d 224, 227 (5th Cir. 1996); *see also*, *United States v. Hinojosa-Almance*, 977 F.3d 407, 411, n. 10 (5th Cir. 2020).

> [Defense counsel] makes the point that there was no direct or proximate harm to the victims of the identity theft. The court disagrees. Identity theft is real and it is a harm. While it may not have resulted in a financial dollars-and-cents harm, it is a harm to those persons whose identities were used illegally. [Furlow used both] their names and their social security numbers, a very serious use of identity. And it certainly rendered those seven people victims, not to mention there were [also] five victims that had actual cash losses.
>
> So[,] there are more than ten victims in this case, and the court denies objection no. 2.[74]

The Court's ruling on this objection was supported by the law and comported with the definition of "victim" under U.S.S.G. § 2B1.1 cmt. n.4(E).[75]  Furlow has failed to argue or demonstrate what more her attorney could have done to achieve success on a meritless objection.

Finally, also meritless is Furlow's claim that her attorney failed to argue that her criminal history category was unfairly elevated due to points assigned for a past, 10-year-old conviction.   The crime at issue is Furlow's forgery conviction on which she was originally sentenced in 2008 and then re-sentenced in 2009 to 90 days imprisonment.[76] The Sentencing Guidelines instruct that "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted."[77] This sentence was imposed in 2009, and the federal counts to which Furlow pled guilty in this Court occurred in 2015.[78] Clearly, less than ten years elapsed between Furlow's sentence on the forgery conviction and the criminal conduct for which Furlow was

---

[74] Rec. Doc. 150, p. 23.
[75] *See United States v. Barson*, 845 F.3d 159, 167.
[76] Rec. Doc. 141, pp. 32-33
[77] U.S.S.G. § 4A1.2(e)(2).
[78] Rec. Doc. 145, p. 1; *see also* Rec. Doc. 1, pp. 8, 12–13.

convicted in this Court.  Attorneys are not required to make frivolous objections,[79] and Furlow's argument on this purported error is without merit.

    2.    <u>Failure to Appeal</u>

Furlow contends her attorney failed to properly advise her about her rights to appeal and the associated deadlines. "To demonstrate ineffective assistance of counsel based on a claim that counsel failed to file a notice of appeal, the movant must show that counsel performed deficiently and that a reasonable probability exists that, but for counsel's deficient conduct, the defendant would have timely appealed."[80]

Furlow claims she was "incorrectly informed" by her counsel "that the issue of sentence" could not be raised on direct appeal, and she did not become aware of the possibility of a direct appeal until the deadline to appeal had expired.[81]  The Government notes that Furlow's allegations are too vague to adequately respond but posits that, if the sentencing errors alleged in Furlow's motion are the errors she wanted to appeal, she cannot carry her burden of proof on this ineffective assistance of counsel claim because she expressly waived these appeal rights in her Plea Agreement.[82]  The Court agrees.

If Furlow's counsel advised her that the errors complained of herein could not be appealed, such advice was correct and sound for the reasons stated above and, further, based on the explicit waiver of appeal rights contained in the Plea Agreement and explained to Furlow by the Court at her arraignment. Furlow has likewise failed to

---

[79] *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).
[80] *United States v. Ruiz*, 304 F. App'x 351, 352 (5th Cir. 2009) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 476–477 (2000)).
[81] Rec. Doc. 151, pp. 8-9
[82] Rec. Doc. 132, p. 12: "Except as otherwise provided in this section, the defendant hereby expressly waives the right . . . to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under . . . 28 U.S.C. § 2255 . . .  This waiver applies to any challenge . . . in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment . . .  Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel."

demonstrate actual prejudice such that, had she appealed these issues, her sentence would have been overturned or reduced.

Notably absent from Furlow's original motion is any argument that her plea was not knowing or voluntary, or that she failed to understand this waiver. Both the terms of the Plea Agreement and the statements by defense counsel and Furlow to the Court demonstrate that Furlow read the agreement, discussed it with her attorney, and she understood the terms.[83] Based on the terms of the Plea Agreement and the representations by Furlow under oath and by her counsel, the Court found the guilty plea knowing and voluntary, and the Court accepted the Plea Agreement.[84]

3.    Second Motion – Attorney Failure to Communicate/Raise Defenses

Furlow claims this second motion[85] is not an amended motion that adds new claims but merely the correction of a clerical error, specifically that page 6 of the second motion was inadvertently not included in her original filing.[86] Considering her *pro se* status and the liberal construction the Court must give her pleadings, and the fact that the ineffective assistance of counsel claim is sufficiently related to the claims in Furlow's original motion, the Court will consider the arguments presented therein.

In this "corrected" motion, Furlow complains generally that her defense counsel failed to sufficiently communicate with her and failed to seek a reduced sentence based on Furlow's purported mental illness and childhood trauma.[87] Furlow explains that she only spoke occasionally with her attorney by phone because she was suffering from the

---

[83] *See id.* at pp. 14-16.
[84] Rec. Doc. 130, p. 2; Rec. Doc. 150, p. 24.
[85] Rec. Doc. 159.
[86] Rec. Doc. 165, p. 1.
[87] Rec. Doc. 159, pp. 5, 12.

COVID-19 virus for nearly the entirety of her court proceedings.[88]  As the Government points out, "the brevity of time spent in consultation, without more, does not establish that counsel was ineffective. [And] brevity of time is only a factor to be considered in the totality of the circumstances."[89]

Furlow argues had she had more contact with her counsel and probation officer, she would have received a reduced sentence based on her mental illness caused by childhood trauma and abuse.[90]  This argument is without merit because these issues were, in fact, argued to (and considered by) the Court before and during Furlow's sentencing hearing.  Prior to her sentencing hearing, Furlow's attorney filed a sealed Sentencing Memorandum on her behalf,[91] and Furlow submitted her own handwritten letter to the Court,[92] both of which detailed the issues Furlow now raises.  Moreover, these issues were raised by Furlow and her counsel with the Court at her sentencing hearing.[93]

However, Furlow also claims that she was suffering from "diminished capacity during the commission of crimes," and she met with the Probation Officer "under the scrutiny and within the hearing of prison staff, again preventing an honest, open disclosure of abuse and trauma germane to [the] court being aware of [her] diminished capacity."[94]  This allegation is vague; Furlow claims she was suffering from diminished capacity during the commission of the crimes, but it is unclear if Furlow contends she was suffering from diminished capacity at the time she entered her guilty plea.  Further, it is

---

[88] *Id.* at p. 5.
[89] *Jones v. Estelle*, 632 F.2d 490, 492 (5th Cir. 1980) (cleaned up); *see also Bower v. Quarterman*, 497 F.3d 459, 469 (5th Cir. 2007) (declining to find ineffective assistance of counsel based on timesheets alone).
[90] Rec. Doc. 159, p. 5.
[91] Rec. Doc. 140 (SEALED).
[92] Rec. Doc. 158 (SEALED).
[93] Rec. Doc. 150, pp. 26-27.
[94] Rec. Doc. 159, p. 5 (p. 6 of document).

unclear to the Court whether she refers generally to her mental illness as "diminished capacity" or to a specific diagnosis affecting her cognitive function and/or ability to understand the proceedings.  Out of an abundance of caution, the Court will interpret this claim as a challenge to the knowing and voluntary nature of her plea.

As a preliminary matter, Furlow waived her right to collaterally attack her sentence in her Plea Agreement.[95] "[A] defendant may waive his right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement, so long as the waiver is both knowing and voluntary."[96] "A defendant knowingly and voluntarily enters a waiver when the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it."[97]

"When a petition does not allege, and the record contains no indication that ratification of the plea agreement was not 'voluntary' or knowledgeable, the Court will hold the defendant to the bargain that he made-the Court need not presume that the waiver was ineffective."[98] Additionally, "when the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain

---

[95] Rec. Doc. 109, p. 10: "Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by 28 U.S.C. 1291 and 18 U.S.C. 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. 2241, 28 U.S.C. 2255, or 18 U.S.C. 3582(c)(2).  This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture, or the length and conditions of supervised release or probation."
[96] *United States v. Potter*, No. 13-141, 2015 WL 3486446, at *1 (E.D. La. June 1, 2015) (Feldman, J.).
[97] *Id.* (citing *United States v. Ruiz*, 536 U.S. 622, 630 (2002)).
[98] *United States v. Potter*, No. 13-141, 2015 WL 3486446, *1-2 (E.D. La. June 1, 2015)(citing *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005)(citing *McKinney*, 406 F.3d at 746).

to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal."[99] As the Supreme Court has stated, "[s]olemn declarations in open court carry a strong presumption of verity."[100]

Nevertheless, guilty pleas must be "voluntary," with attendant waivers having been made "'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'"[101] A plea is knowing and intelligent when the defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."[102] In determining whether a plea is knowing and intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect."[103] In *Boykin v. Alabama*,[104] the Supreme Court held that courts must hold a hearing prior to the entry of a guilty plea, and the court must elicit an affirmative showing that the decision to plead guilty was voluntarily and intelligently made.[105] Rule 11 of the Federal Rules of Criminal Procedure sets forth procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly by requiring "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."[106] "The very premise of the required Rule 11 colloquy is that,

---

[99] *United States v. Portillo*, 18 F.3d 290, 292–93 (5th Cir.1994); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *Bond*, 414 F.3d at 544.

[100] *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

[101] *United States v. Ruiz*, 536 U.S. 622, 629 (2002)(quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

[102] *Bousley v. United States*, 523 U.S. 614, 628 (1998).

[103] *Taylor v. Whitney*, 933 F.2d 325, 329 (5th Cir.1991).

[104] 395 U.S. 238 (1969).

[105] *Matthew v. Johnson*, 201 F.3d 353, 368 n. 22 (5th Cir. 2000).

[106] *United States v. Vonn*, 535 U.S. 55, 62 (2002).

even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them."[107]

Determining whether a defendant understands the consequences of her guilty plea, including the waiver of her right to appeal, does not require a trial court to determine that the defendant has a perfect understanding of the consequences; the court must only ascertain whether the defendant has a realistic or reasonable understanding of her plea.[108] A court's adherence to the colloquy required by Rule 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea."[109] "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as [the defendant] understood the length of the time [s]he might possibly receive, [s]he was fully aware of [her] plea's consequences."[110]

After questioning both her attorney and Furlow under oath at her re-arraignment hearing, the Court was satisfied that she had no mental impairments to entering her guilty plea, and her plea was knowing and voluntary.  Furlow provides no evidence that she was ever clinically diagnosed with any diminished capacity at the time of the commission of the crimes or at the time she entered into the Plea Agreement and pled guilty before the Court. There is likewise no evidence before the Court that Furlow was at diminished or limited cognitive function that would have resulted in a reduced sentence, thus demonstrating prejudice.

---

[107] *Id*. at 78 (Stevens, J., concurring).
[108] *See United States v. Gracia*, 983 F.2d 625, 627–28 (5th Cir.1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea").
[109] *Id*. at 627.
[110] *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir.1990).

Based on the above jurisprudence, Furlow's "[s]olemn declarations in open court carry a strong presumption of verity."[111]  Indeed, the Fifth Circuit has held that a "signed … unambiguous plea agreement … is accorded great evidentiary weight."[112]  Further, as the Fifth Circuit expressed in *United States v. Cothran*, "we give the statements during the [Rule 11] colloquy greater weight than we give unsupported, after-the-fact, self-serving revisions."[113]  Furlow has presented no countervailing evidence to undermine the voluntariness of her plea, and these conclusory, after-the-fact assertions bear no evidentiary weight.  Accordingly, she has failed to carry her burden of demonstrating ineffective assistance of counsel based on these claims.

### C.    Claim that Government Breached Plea Agreement

Furlow's Response Brief at Record Document 161 raises a wholly new claim not previously made in the original motion or in the purported corrected motion – that the Government breached the Plea Agreement by not asking the Court to award acceptance of responsibility points.  As noted by the Government, these claims are untimely and do not relate back to the original motion.

Under the Federal Rules of Civil Procedure, a new, untimely filed claim can avoid being declared time-barred if the court finds that it "relates back" to a timely-filed claim by arising "out of the conduct ... set out--or attempted to be set out--in the original pleading."[114] To determine whether a claim relates back to the initial filing, the court must "look for commonalities between the facts underlying the different claims."[115]  In the

---

[111] *Blackledge*, 431 U.S. at 73–74.
[112] *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).
[113] 302 F.3d 279, 284 (5th Cir. 2002).
[114] Fed. R. Civ. P. 15(c)(1)(B); *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (explaining that the amendment or supplement of a habeas petition is subject to Federal Rule of Civil Procedure 15).
[115] *United States v. Alaniz*, 5 F.4th 632, 636 (5th Cir. 2021) (citing *Mayle v. Felix*, 545 U.S. 644, 664 (2005)).

habeas context, a proposed amendment relates back to the date of the original pleading if a "common 'core of operative facts' unit[es] the original and newly asserted claims."[116] However, if the new claim asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth," then the proposed amendment does not relate back to the original pleading and is time-barred.[117] When a proposed untimely amendment to a § 2255 raises a new claim that does not relate back to the original motion, it is time-barred.[118]

First, this claim is clearly untimely. The first mention of this claim is in Furlow's Response filed on November 16, 2022.  Furlow was required to file her motion under § 2255(f)(1) by August 19, 2022, one year and fourteen days after entry of the judgment on the docket.[119] This new claim, however, was mailed in an envelope that was postmarked long after that date—on November 15, 2022.[120]  Further, it does not relate back to her original motion. There is absolutely no relationship between the claim that the Government breached the Plea Agreement and Furlow's ineffective assistance of counsel claims.  Indeed, it easily constitutes a "ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  It also requires an entirely different legal analysis governed by a vastly different body of jurisprudence. Accordingly, this claim is dismissed as untimely.

---

[116] *Mayle v. Felix*, 545 U.S. 644, 659 (2005).

[117] *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (citing *Mayle*, 545 U.S. at 650).

[118] *See United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (instructing that an amendment does not relate back if it "assert[s] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth") (quotation omitted); *see United States v. Cardenas*, 13 F.4th 2021, 385 (5th Cir. 2021) (citing with approval *Brannigan v. United States*, 249 F.3d 58 (7th Cir. 2001), wherein the Seventh Circuit held that the word "claim" means "a challenge to a particular step in the case, such as the introduction of a given piece of evidence, the text of a given jury instruction, or the performance of counsel.").

[119] *See* Rec. Doc. 155, p. 1, n. 1.

[120] Rec. Doc. 161, p. 4.

### D.    Conditions of Confinement

Furlow raises Eighth Amendment conditions of confinement claims, arguing *inter alia* that the BOP is violating her rights by failing to provide her with mental health programming – such as the Court's recommended Cognitive Behavioral Therapy – and failing to house her within 500 miles from her home in South Weymouth, Massachusetts.[121]  It is well settled that conditions of confinement claims are not cognizable under Section 2255.[122]  Further, this Court has no authority to order the BOP to designate a specific facility for an inmate.  Title 18 U.S.C. § 3621(b) provides that the BOP "shall designate the place of the prisoner's imprisonment."  The BOP considers bed availability, the prisoner's security designation, programmatic needs, mental and medical health needs, faith-based needs, recommendations of the sentencing court, other security concerns of the BOP, and the proximity to the inmate's primary residence.[123]  But, importantly: "A designation of a place of imprisonment under [Section 3621] is not reviewable by any court."[124]  In keeping with this statutory directive, the Fifth Circuit has held that "a prisoner has no liberty interest or right to be housed in any particular facility, and the BOP has wide discretion in designating the place of a prisoner's imprisonment."[125]  Accordingly, Furlow's motion is denied as to these claims.

### E.    Amended Sentencing Guidelines

In subsequent briefing, Furlow argues that the 2023 Sentencing Guidelines Manual should have applied to her sentence in August 2021 and that intended loss under

---

[121] Rec. Doc. 151, pp. 7, 12.
[122] *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992); *Cheek v. Warden of Federal Medical Center*, 835 F. App'x 737, 738 (5th Cir. 2020).
[123] *Id.*
[124] *Id.*
[125] *Siebert v. Chandler*, 586 Fed.Appx. 188, 189 (5th Cir. 2014)(citing *Olim v. Wakinekona*, 461 U.S. 238, 244-245, 103 S.Ct. 1741, 1745 (1983)); 18 U.S.C. § 3621(b).

U.S.S.G. § 2B1.1(b)(1) (2018) and under § 2B1.1 cmt. 3(A)(ii) (2018) was improperly applied to her guidelines calculation.[126] These claims are untimely, waived by her Plea Agreement as discussed above, and procedurally barred.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motions to Vacate under 28 U.S.C. § 2255 are DENIED.[127]  All other requested relief in the form of Responses and Amendments are hereby DENIED.[128]

Defendant's Motion for Evidentiary Hearing, Appointment of Counsel, and for Decision in the Case[129] is also GRANTED in part and DENIED in part.  The motion for decision is granted.  The Motion for Evidentiary Hearing is denied for the reasons set forth above.  Further, Furlow is not entitled to counsel to pursue modification of her sentence or any collateral attack, nor has she shown that the Court should exercise its discretionary power to appoint counsel to indigent individuals seeking relief under 28 U.S.C. § 2255, when "the interests of justice so require."[130]  Whether the interests of justice require the appointment of counsel depends in large part on the merits of the motion, the complexity of the legal and factual arguments raised by the motion, and the capabilities of the petitioner.[131]  As noted above, Furlow has failed to plead and substantiate the facts upon

---

[126] Rec. Docs. 166, 170.
[127] Rec. Docs. 151, 159.
[128] Rec. Doc. 161, 166.
[129] Rec. Doc. 175.
[130] 18 U.S.C. § 3006A(a)(2)(B).
[131] *United States v. Declouet*, 07-198, 2020 WL 708137, at *1 (E.D. La. Feb. 12, 2020)(citing *United States v. Barnes*, 662 F.2d 777, 780 (D.C. Cir. 1980); *United States v. Emmons*, 154 F.3d 417 (5th Cir. 1998) (per curiam) (denying motion to appoint counsel on appeal of denial of § 2255 motion where the issues presented were "straightforward"); *United States v. Williams*, No. 13-286, 2018 WL 3417802, at *1 (E.D. La. July 13, 2018); *Marquez v. United States*, Nos. 17-65/05-755, 2017 WL 0186409, at *1 (March 16, 2017) (denying appointment of counsel on § 2255 motion where issues presented were "not particularly complex" and defendant had adequately explained the issues and the relevant facts).

which she relies to request modification of her sentence, nor has she carried her § 2255 burden to justify this collateral attack.

Finally, the Court finds that Furlow is not entitled to a certificate of appealability. An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2255 "unless a circuit justice or judge issues a certificate of appealability."[132] A certificate of appealability may issue only if a § 2255 petitioner has made a substantial showing of the denial of a constitutional right.[133]

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of h[er] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[134] In the instant case, the Court finds that reasonable jurists would not debate the denial of Furlow's Motions.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this ___ day of December, 2024.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[132] 28 U.S.C. § 2253(c)(1)(B).
[133] 28 U.S.C. § 2253(c)(2).
[134] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005)(quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).